UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
J & J SPORTS PRODUCTION, INC.,

                 Plaintiff,

      - against -

RAYMON McADAM and SOORAJANIE
HARDEO, Individually, and as officers,
directors, shareholders and/or principals of
WILD ORCHID BAR & LOUNGE, INC.,
d/b/a WILD ORCHID BAR & LOUNGE.

                 Defendants.
-----------------------------------------------------X

**MEMORANDUM & ORDER**
14 CV 5461 (PKC) (CLP)

PAMELA K CHEN, United States District Judge:

Plaintiff J & J Sports Production, Inc. ("Plaintiff" or "J & J") commenced this action on September 17, 2014 against Defendants Wild Orchid Bar & Lounge, Inc. ("Wild Orchid"), Raymon McAdam ("McAdam"), and Soorojanie Hardeo ("Hardeo") (collectively, "Defendants") for violations of the Federal Communications Act of 1934 ("FCA"), as amended, 47 U.S.C. §§ 605 and 553, based on Defendants' alleged willful, unauthorized publication of a closed-circuit televised boxing event distributed by Plaintiff. (Dkt. 1 ("Complaint" or "Compl.") ¶¶ 1, 23, 29, 34, 37.) Plaintiff executed summonses, which were properly served upon each Defendant. (Dkts. 7; 11−12.) Defendants have not appeared in this action to answer the Complaint, and the time for answering has expired. The Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("FRCP") on: (1) January 8, 2015 with respect to Wild Orchid; (2) February 3, 2015 with respect to McAdam; and (3) March 16, 2015 with respect to Hardeo. (*E.g.*, Dkt. 10.) On April 30, 2015, Plaintiff moved, pursuant to FRCP 55(b), for a default judgment, to which Defendants have not responded. (Dkt. 14.)

For the reasons set forth below, it is ordered that Plaintiff be awarded $20,122.50, which includes $5,495.00 in statutory damages, $10,990.00 in enhanced damages, $2,747.50 in attorney's fees, and $890.00 in litigation costs.

**BACKGROUND**

Plaintiff alleges that it expended substantial funds to commercially distribute the broadcast of the boxing match between Manny Pacquiao and Timothy Bradley, including all related bouts, which began on April 12, 2014 (the "Event"), throughout New York State via closed-circuit television and encrypted satellite signal. (Compl. ¶¶ 23, 25; *see* Dkts. 14−1 (Affidavit of J & J President Joseph Gagliardi, dated Mar. 19, 2015 ("Gagliardo Aff.")) ¶ 3; 14−6 (Affidavit of Christopher J. Hufnagel, Esq, dated Apr. 30, 2015 ("Hufnagel Aff.")) ¶ 3.) Plaintiff entered into agreements with commercial establishments throughout New York State, such as bars, clubs, lounges, and restaurants, allowing them to publicly exhibit the Event to their patrons. (Compl. ¶ 24; Gagliardo Aff. ¶ 3 & Exs. A, B.) A commercial establishment could only broadcast the Event by entering into a contract with Plaintiff and paying a commercial sublicense fee, the amount of which was based on the establishment's capacity. (*Id.*) The commercial sublicense fee to exhibit the Event at an establishment with a maximum capacity of 100 persons was $2,200.00. (Gagliardi Aff. Ex. B.)

Once a commercial establishment contracted with Plaintiff to broadcast the Event, Plaintiff provided the electronic decoding equipment necessary to receive the signal for the Event, which was electronically coded or scrambled. (Gagliardi Aff. Ex. A; Hufnagel Aff. ¶ 3; *see* Compl. ¶¶ 23, 26.) Plaintiff contends that the Event could not be "mistakenly or innocently intercepted." (Gagliardo Aff. ¶ 11.) Methods to unlawfully intercept and exhibit the Event include: splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent

residence to a commercial establishment; misrepresenting a commercial establishment as a residential property to purchase the broadcast of the Event at a residential price; ordering the Event for a residence and moving a residential receiver to a commercial location; or employing "slingbox" technology that allows a consumer to sling programming from personal systems onto their computers. (Compl. ¶ 27; Gagliardo Aff. ¶ 11.)

Wild Orchid is a commercial establishment, located at 111−48 Lefferts Blvd, South Ozone Park, New York. (Compl. ¶¶ 9, 16.) During the time of the alleged conduct, McAdam and Hardeo were officers, directors, shareholders, and/or principals of Wild Orchid, with supervisory capacity and control over the activities and internal operating procedures within Wild Orchid. (*Id.* ¶¶ 9−11.) McAdam and Hardeo received a financial benefit from the operations of Wild Orchid, including the alleged conduct. (*Id.* ¶ 12.) Defendants did not purchase the rights to exhibit the Event from Plaintiff. (Gagliardo Aff. ¶ 7 & Ex. B.)

Plaintiff hired auditors to identify piracy of its broadcasts by unauthorized and unlicensed establishments. (*Id.* ¶ 5.) According to Plaintiff, it "experience[d] a serious erosion of [] sales to commercial establishments" due to "piracy of [] broadcasts by unauthorized and unlicensed establishments." (*Id.* ¶ 12.) On the night of transmission, at approximately 12:44 a.m. on April 13, 2014, Plaintiff's auditor Cosmo Lubrano visited Wild Orchid and observed five television sets displaying the Event to approximately 100 patrons, including one television in a "VIP area." (*Id.* ¶ 8 & Exs. C & D.) Lubrano estimated that Wild Orchid had a capacity of 50 to 100 persons. (*Id.* ¶ 8 & Ex. C.) Wild Orchid charged Lubrano a $20.00 cover charge to enter the premises. (*Id.* Ex. C; *see* Compl. ¶ 19.)

Plaintiff asserts that because Defendants broadcast the Event without contracting with Plaintiff for the right to do so, and without paying Plaintiff the required commercial sublicense

fee, they willfully intercepted and/or received transmission of the Event, in violation of 47 U.S.C. §§ 605 and 553. (Compl. ¶¶ 26, 29, 34, 37, 44.)

## DISCUSSION

### I. Legal Standards for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for entry of a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on a plaintiff's motion. Fed. R. Civ. P. 55(b)(2). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96, (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. RockComm. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing *Erwin DeMartino Trucking Co. v. Jackon*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations [in the plaintiff's pleadings], accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see Transatl. Marine Claims Agency, Inc.v. Ace Shipping Corp*, 109 F.3d 105, 108 (2d Cir. 1997) (the court "deems all the well-pleaded allegations in the pleadings to be admitted" for purposes of deciding a default judgment motion). In other words, "after default . . . it remains for the court

to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls-Royce*, 688 F. Supp. 2d at 153 (alteration in original) (citation omitted).

## II. Defendants' Liability

Plaintiff is seeking to recover under both sections 605 and 553 of the FCA for Defendants' illegal interception of the event. (Compl. ¶¶ 1, 29, 37.) "Whereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication." *J & J Sports Prods., Inc. v. La Ruleta, Inc.*, 11 CV 4422, 2012 WL 3764062, at *2 (E.D.N.Y. Aug. 7, 2012) (citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132–33 (2d Cir. 1996)), *report & recommendation adopted*, 2012 WL 3764515 (E.D.N.Y. Aug. 29, 2012); *see also J & J Sports Prods., Inc. v. Arhin*, 07 CV 2875, 2009 WL 1044500, at *4 (E.D.N.Y. Apr. 17, 2009) ("When television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply."). A plaintiff may not recover under both statutes for a single illegal transmission. *See J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, 13 CV 04299, 2014 WL 4467774, at *5 (E.D.N.Y. Sept. 9, 2014). Where defendants are found to have violated both statutes, damages are only awarded pursuant to section 605. *Id.* at *5. The Court therefore first considers Plaintiff's request for default and damages under Section 605.

Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a). This section has been held to apply to the interception of cable communications originating as a radio or satellite transmission.

5

*See Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002); *Int'l Cablevision*, 75 F.3d at 131−32.

Plaintiff's well-pleaded allegations as to Wild Orchid establish its violation of section 605. Specifically, Plaintiff held rights to distribute the Event, which was broadcast via "closed circuit television" and "encrypted satellite signal" so that electronic decoding equipment was necessary to access or "de-scramble[]" the broadcast. (Compl. ¶¶ 23, 26−27; Gagliardo Aff. ¶ 11; Hufnagel Aff. ¶ 3.) Wild Orchid did not obtain authorized access to the Event through Plaintiff. (Gagliardo Aff. ¶ 7 & Ex. B; *see* Compl. ¶¶ 26, 34.) Nevertheless, Plaintiff's auditor observed the Event being shown at Wild Orchid to approximately 100 patrons on five televisions. (Gagliardo Aff. ¶¶ 5, 8 & Exs. C, D; *see* Compl. ¶¶ 18−20, 26, 34.) Given the encryption and other methods of protecting the broadcast, the Plaintiff asserts that, although Plaintiff cannot determine the precise method by which the Defendants intercepted its broadcast, the Event must have been unlawfully obtained. (Compl. ¶ 27.) Taken together, these allegations are sufficient to support such an inference and to form the basis for liability under Section 605. *See 1400 Forest Ave Rest.*, 2014 WL 4467774, at \*6; *J & J Sports Prods., Inc. v. Tellez*, 11 CV 2823, 2011 WL 6371521, at \*3 (E.D.N.Y. Dec. 20, 2011); *J & J Sports Prods., Inc. v. Shafik*, 10 CV 3809, 2011 WL 1240559, at \*1 (E.D.N.Y. Feb. 11, 2011), *report & recommendation adopted*, 2011 WL 1218343 (E.D.N.Y. Mar. 30, 2011). .

Plaintiff also states claims against McAdam and Hardeo as officers, directors, shareholders, and/or principals of Wild Orchid. "Establishing individual liability under Section 605(a) requires a showing either of 'contributory infringement,' which arises when the individual 'authorize[d] the violations,' or 'vicarious liability,' which arises when the individual 'had a right and ability to supervise the infringing activities and had an obvious and direct financial

interest in the exploitation of [the] copyrighted materials.'" *Tellez*, 2011 WL 6371521, at *3 (quoting *J & J Sports Prods. v. LDG Williams, LLC*, 11 CV 2145, 2011 WL 5402031, at *5–6 (E.D.N.Y. Nov.7, 2011)) (alterations in *Tellez*). In this case, Plaintiff alleges that McAdam and Hardeo had supervisory capacity and control over the activities and internal operating procedures at Wild Orchid, and received a financial benefit from its operations. (Compl. ¶¶ 9−12.) Courts have found similar allegations sufficient to establish individual liability under Section 605(a). *See 1400 Forest Ave Rest.*, 2014 WL 4467774, at *6; *J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, Inc.*, 13 CV 5068, 2014 WL 2879868, at *5 (E.D.N.Y. May 7, 2014), *report & recommendation adopted*, 2014 WL 2879890 (E.D.N.Y. June 24, 2014); *Tellez*, 2011 WL 6371521, at *3−4; *Shafik*, 2011 WL 1240559, at *2. Accordingly, McAdam and Hardeo are properly held jointly and severally liable with Wild Orchid.

### III. Damages

Plaintiff seeks a damages award of $10,000.00 in statutory damages, and an additional 15,000.00 in enhanced damages for Defendants' alleged willfulness. (Dkt. 14.) A court may evaluate the fairness of a proposed damages award by relying on affidavits and documentary evidence. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993). FRCP 55(b) (2) permits, but does not require, a court to conduct a hearing in order to determine the amount of damages to award after a liability judgment by default. Fed. R. Civ. P. 55(b)(2); *see Nwagboli v. Teamwork Transp. Corp.*, 08 CV 4562, 2009 WL 4797777, at *2 (S.D.N.Y. Dec. 7, 2009) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

### A. Plaintiff is Entitled to Statutory Damages Under Section 605

A plaintiff recovering statutory damages is entitled to recover an award "of not less than $1,000 or more than $10,000" for each violation of Section 605(a). 47 U.S.C. § 605(e)(3)(C)(i)(II). Courts have interpreted the showing of an event on a single night as one violation. *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 115 (E.D.N.Y. 2011) (quoting *Garden City Boxing Club, Inc. v. Rosado*, 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006)).

Plaintiff requests the maximum statutory damages award of $10,000.00. (Dkt. 14.) "The amount of damages to be assessed pursuant to Section 605 rests within the sound discretion of the Court." *Time Warner Cable of N.Y.C. v. Sanchez*, 02 CV 5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003). Courts in this District utilize one of two methods to determine the amount of statutory damages to be awarded. *1400 Forest Ave Rest.*, 2014 WL 4467774, at *7; *J & J Sports Prods., Inc. v. Morleys Tavern Inc.*, 13 CV 5211, 2014 WL 4065096, at *6−7 (E.D.N.Y. May 9, 2014), *report and recommendation adopted*, 2014 WL 4075162 (E.D.N.Y. Aug. 15, 2014). Under the "flat-fee" method, the Court awards an amount based on the licensing fee defendants would have paid to show the Event legally and the balance of the equities. *1400 Forest Ave Rest.*, 2014 WL 4467774, at *7; *J & J Sports Prods., Inc. v. Chulitas Enter. Corp.*, 12 CV 3177, 2014 WL 917262, at *4 (E.D.N.Y. Mar. 10, 2014). Under the "per-person" method, the Court calculates the amount of damages by multiplying the number of individuals who viewed the broadcast by the typical fee for a residential customer to view the fight. *1400 Forest Ave Rest.*, 2014 WL 4467774, at *7; *Morleys Tavern*, 2014 WL 4065096, at *7; *Chulitas Enter.*, 2014 WL 917262, at *4. Statutory damages are then awarded in an amount equal to the greater of the two calculations, but not both. *1400 Forest Ave Rest.*, 2014 WL 4467774, at *7−8; *J & J Sports Prods., Inc. v. After Dark Sports Bar & Lounge Inc.*, 13 CV 5506, 2014 WL 3111779, at

*3 (E.D.N.Y. Apr. 17, 2014), *report and recommendation adopted*, 2014 WL 3110029 (E.D.N.Y. July 7, 2014).

In this case, the per-person calculation results in a higher award. Applying the flat-fee method, Defendants would have paid a $2,200.00 commercial sublicense fee to exhibit the Event based on its approximate maximum capacity of 100 persons. (*See* Compl. ¶ 18; Gagliardi Aff. ¶ 8 & Exs. B, C.) To calculate damages under the per-person method, the Court assumes a $54.95 residential fee in light of evidence presented by Plaintiff in other cases. *See, e.g.*, *J & J Sports Productions, Inc. v. El Coyote Carpau Inc.*, 14 CV 03642, 2014 WL 5147629, at *3 (E.D.N.Y. Oct. 14, 2014) (applying a $54.95 residential rate); *1400 Forest Ave Rest.*, 2014 WL 4467774, at *8, n.8 ("Courts in this District have consistently used a rate of $54.95 when calculating statutory damages."). Multiplying this number by the approximately 100 patrons in Defendants' bar results in an award of $5,495.00. Taking the greater of these two amounts, the Court concludes that the appropriate statutory damage amount for the alleged violation of Section 605(a) is $5,495.00.

### B. Plaintiff is Entitled to Enhanced Damages Under Section 605

Plaintiff also seeks enhanced statutory damages in the amount of $15,000.00. (Dkt. 14.) In addition to basic statutory damages, section 605 provides for an additional award of up to $100,000.00 in enhanced damages where a defendant's violation was willful and committed for commercial advantage or financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). Courts have found that, as a matter of law, "[t]he broadcast of an event without authorization is a deliberate act, and thus establishes willfulness." *Chulitas Enter.*, 2014 WL 917262, at *5 (quoting *J & J Sports Prods., Inc. v. Welch*, 10 CV 159, 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010)) (alteration in *Chulitas*).

To determine whether willful conduct warrants an award of enhanced damages, courts consider a variety of factors "including whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *1400 Forest Ave Rest.*, 2014 WL 4467774, at *9 (citing *Chulitas Enter.*, 2014 WL 917262, at *5). Courts in this Circuit typically award enhanced damages as a multiple of the statutory damages award. *Id.*; *After Dark Sports Bar & Lounge*, 2014 WL 3111779, at *5. Thus, Courts have awarded enhanced damages that are equal to, double, or triple the statutory damages award. *1400 Forest Ave Rest.*, 2014 WL 4467774, at *9 (collecting cases); *Morleys Tavern Inc.*, 2014 WL 4065096, at *8 (same); *Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp.*, 11 CV 1475, 2012 WL 3064129, at *5 (E.D.N.Y. May 23, 2012) (same), *report and recommendation adopted*, 2012 WL 3065523 (E.D.N.Y. July 27, 2012).

Here, Plaintiff's well-pleaded allegations support the imposition of enhanced damages under Section 605(e)(3)(C)(ii). By intercepting the transmission of the Event without paying fees or entering into a licensing agreement with Plaintiff, Defendants committed a deliberate act that is sufficient to establish willfulness under Section 605. *See La Ruleta*, 2012 WL 3764062, at *4; *Arhin*, 2009 WL 1044500, at *7; *Time Warner Cable of N.Y.C. v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997). According to Plaintiff's president, the Event signal could not be intercepted mistakenly or innocently. (Gagliardo Aff. ¶ 11.) Rather, to broadcast the Event, Defendants must have consciously and deliberately engaged in some form of unlawful and willful conduct, such as: splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment; commercially misusing cable or

satellite by registering as a resident what is in fact a business establishment; purchasing the Event for the residential price; taking a lawfully obtained box or satellite receiver from a private residence, into a business; broadcasting through the internet; or "slingboxing", allowing consumers to sling a broadcast from personal home cables or satellite systems into a computer. (*Id.*) Plaintiff alleges that Defendants would not have been able to display the Event without engaging in one of these forms of willful unlawful conduct. (Compl. ¶ 27.) Therefore, Plaintiff is entitled to enhanced damages.

Although Plaintiff has not presented evidence that Defendants repeatedly violated section 605, the evidence shows that Defendants exhibited the Event to approximately 100 patrons through five television screens, including patrons seated in a VIP area. (Gagliardo Aff. ¶ 8 & Exs. C, D.) The evidence also demonstrates that Defendants collected a cover charge of $20 per person, resulting in at least $2,000.00 in admission fees. (*Id.* Ex. C; *see* Compl. ¶ 19.) Plaintiff further alleges that Defendants advertised their exhibition of the Event (Compl. ¶¶ 20−21), and claims an erosion of its sales and customer base, as well as significant costs to hire auditors to investigate unlicensed broadcasts of the event (Gagliardo Aff. ¶¶ 5, 12−17). Upon a consideration of the facts presented and relevant case law, the Court finds that an amount two times the statutory damages award, or $10,990.00, will best provide an adequate recovery for Plaintiff and serve as a deterrent to future violations, without unduly penalizing Defendants. *See, e.g.*, *1400 Forest Ave Rest.*, 2014 WL 4467774, at *2, 10−11 (awarding enhanced damages of double the statutory damages award based on evidence that defendants collected $8.00 in admission fees from 40 patrons, and plaintiff's allegation that its customer base had been eroded); *After Dark Sports Bar & Lounge*, 2014 WL 3111779, at *1, 4−5 (awarding enhanced damages of twice the statutory damages where there was evidence that defendants obtained a

cover charge of $20.00 from 22 patrons, and plaintiff claimed damage to its reputation and goodwill); *Chulitas Enter.*, 2014 WL 917262, at *5−6 (finding that enhanced damages award of double the amount of statutory damages was appropriate based on willful interception and plaintiff's claims of costs related to "persistent signal piracy," although there was no allegation or evidence "that defendant repeatedly violated section 605, advertised the event, or collected a cover or premium on food and drink during the event"); *La Camisa Negra Rest. & Bar*, 2012 WL 3064129, at *6 (concluding that a multiplier of two is "a sufficient deterrent to future piracy by a small establishment" where evidence showed that defendant exhibited a broadcast via four televisions to 16 patrons at a venue with a capacity of 100, but there was no evidence of repeated violations, advertisement, or a cover charge); *Tellez*, 2011 WL 6371521, at *6 (awarding two times the amount of statutory damages event though there was no evidence of previous violations, and no cover charge was imposed).

Therefore, the Court awards Plaintiff $5,495.00 in statutory damages and $10,990.00 in enhanced damages, for a total damages award of $16,485.00.

### IV. Attorney's Fees and Costs

Under Section 605(e)(3)(B)(iii), Plaintiff is also entitled to costs and reasonable attorney's fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails"). Plaintiff seeks to recover $3,509.00 in attorney's fees, and $890.00 in litigation costs. (Hufnagel Aff. ¶¶ 10−11; Dkt. 14−9.) For the following reasons, the Court awards Plaintiff its full litigation costs, but reduces the requested attorney's fee award to $2,747.50.

In the Second Circuit, a "presumptively reasonable fee" must be calculated using the "lodestar," *i.e.*, multiplication of a reasonable hourly rate by the reasonable number of hours required by the case. *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014); *Millea v.*

*Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). A district court should "bear in mind all of the case-specific variables that [the court] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis omitted). A "presumptively reasonable [attorneys'] fee boils down to what a reasonable, paying client would be willing to pay given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal marks omitted).

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147−48 (2d Cir. 1983). The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances. *Scott v. City of New York*, 626 F.3d 130, 133−34 (2d Cir. 2010). If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours in calculating a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Plaintiff submitted contemporaneous time records from Christopher J. Hufnagel, Esq., an associate attorney with three years' experience as a practicing attorney, as well as paralegals and legal assistants with varying years of experience. (Hufnagel Aff. ¶ 10.) Plaintiff requests that the Court award fees based on an hourly rate of $250.00 for Mr. Hufnagel's work, and $95.00 for the work of paralegals and legal assistants. (*Id.* ¶ 11.) However, the Court finds these requested rates to be excessive compared to those customarily approved in this district. *See*, *e.g.*, *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 10 CV 696, 2013 WL 950573, at *7 (E.D.N.Y. Mar. 12, 2013) (finding that reasonable hourly rates in this district range from $200 to $300 for senior associates and $100 to $200 for junior associates); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (finding that reasonable rates in this district range from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants). The requested $250 hourly rate for Mr. Hufnagel, an associate with three years' experience, is higher than those previously approved in this district for attorneys with comparable experience. *See*, *e.g.*, *Lema v. Mugs Ale House Bar*, 12 CV 2182, 2014 WL 1230010, at *5−6 (E.D.N.Y. Mar. 21, 2014) (approving hourly rates of $125 for associate with two years' experience, and $225 for an associate with six years' experience); *Jean v. Auto and Tire Spot Corp.*, 09 CV 5394, 2013 WL 2322834, at *7 (E.D.N.Y. May 28, 2013) (reducing the hourly rate for an associate with four years' experience from $225 to $200). Likewise, the requested rate of $95 for paralegals and legal assistants exceeds the $75 rate usually awarded in this district. *See*, *e.g.*, *Lema*, 2014 WL 1230010, at *6 (reducing a $90 hourly rate for paralegal work to $75); *Guzman v. Joesens Auto Parts*, 11 CV 4543, 2013 WL 2898154, at *5 (E.D.N.Y. June 13, 2013) (finding hourly rate of $75 for paralegals to be "presumptively reasonable"); *Gesualdi v. Tapia Trucking LLC*, 11 CV 4174, 2013 WL 831134,

at *2 (E.D.N.Y. Mar. 6, 2013) (adopting hourly rate of $75 for paralegals); *Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 314 (E.D.N.Y. 2012) (finding $90 hourly rate for paralegal work "excessive" and reducing it to $75). In light of the rates typically approved in this district and the straightforward nature of this default judgment, the Court finds that it is appropriate to reduce the hourly rates to $200.00 for Mr. Hufnagel's work, and $75.00 for the work of paralegals and legal assistants. (Hufnagel Aff. ¶ 13 (citing cases finding that hourly rates of $200 for counsel and $75 per hour for paralegals to be within customary range in this district)); *see also J & J Sports Prods., Inc. v. Mendoza*, 06 CV 6846, 2008 WL 170199, at *10 (E.D.N.Y. Jan. 16, 2008) (in context of motion for default judgment, approving billing rates of $200 per hour for attorney and $75 per hour for paralegal); *J & J Sports Prods., Inc. v. Rodrigues*, 05 CV 5805, 2007 WL 1726462, at *9 (E.D.N.Y. Apr. 19, 2007) (same).

The Court has also reviewed the time records submitted by Plaintiff and finds the 11.3 hours expended by counsel, and 7.2 hours expended by paralegals and legal assistants, to be reasonable. (Hufnagel Aff. ¶ 11); *see LG Funding, LLC v. Florida Tilt, Inc.*, 15 CV 631, 2015 WL 5038195, at *4 (E.D.N.Y. Aug. 26, 2015) (finding that 41.4 hours expended on a default judgment was reasonable). Nevertheless, the Court subtracts 0.7 hours of work performed by paralegals and legal assistants with regard to "Kevin Deolall," since there is no explanation

regarding Mr. Deolall's identity and his relation to this case. (*See* Hufnagel Aff. ¶ 11.)[1] The total attorney's fee award is thus $2,747.50.[2]

Plaintiff also seeks to recover $400.00 for the cost of filing and $490.00 for service of process. (Hufnagel Aff. ¶ 10 & Ex. A.) The Court finds these costs to be both reasonable and properly documented. *See 1400 Forest Ave Rest.*, 2014 WL 4467774, at *11 (awarding costs for filing and service of process); *La Ruleta*, 2012 WL 3764062, at *4 (recommending that the plaintiff be awarded $120.00 in process server fees and $350.00 in filing fees). The Court therefore awards Plaintiff $2,747.50 in attorney's fees and $890.00 in costs.

## CONCLUSION

Accordingly, for the reasons stated above, it is ordered that Plaintiff be awarded $5,495.00 in statutory damages, $10,990.00 in enhanced damages, $2,747.50 in attorney's fees, and $890.00 in costs, for a total award of $20,122.50. The Clerk of the Court is respectfully requested to enter judgment and terminate this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: December 9, 2015
      Brooklyn, New York

---

[1] The paralegal or legal assistant expended .10 hours to receive an email from Mr. Deollal on May 20, 2014 and 1.20 hours to email and place phone calls to Mr. Deollal and Defendant McAdam from June 3 to June 25, 2014. (Hufnagel Aff. ¶ 11.) Without a clear explanation of how much of those 1.20 hours was expended with regard to Mr. Deollal, the Court divides these hours in half.

[2] This is the result of adding the number of hours expended by counsel, 11.3, multiplied by a $200 hourly rate, to the number of hours expended by the paralegals and legal assistants, 6.5, multiplied by a $75 hourly rate.